[No. 20607. In Bank. — September 11, 1890.]

Ex parte JAMES H. BARRY, on Habeas Corpus.

Contempt — Newspaper Publication — Assailing Judge Pending Litigation. — A publication in a newspaper of an article charging a judge with "deliberate lying about the law, deliberate intentional falsification in his official capacity, and deliberate intentional denial of justice," in the trial of a case before him, the case not having been finally disposed of, is an "unlawful interference with the proceedings of a court," and constitutes a contempt of court, within subdivision 9 of section 1209 of the Code of Civil Procedure, and is punishable as such.

Id. — Pendency of Action. — Where a demurrer to a complaint has been sustained with leave to amend, and the time for amendment has not expired, the case is still pending and undisposed of.

Id. — Abuse of Liberty of the Press. — While the liberty of the press to fairly criticise the official conduct of a judge, or the decisions of the proceedings of the courts, should be preserved and protected by the courts, yet the abuse of that liberty, so far as it affects the courts in relation to pending causes, should be restrained and punished; and the publication here complained of was a most flagrant abuse of the press, and justly punished as such.

Application to the Supreme Court for a writ of *habeas corpus*. The facts are stated in the opinion of the court.

*P. Reddy, James G. Maguire,* and *E. P. Cole,* for Petitioner.

*J. A. Hosmer, E. F. Preston,* and *William M. Fitzmaurice, contra.*

Works, J. — This is an application for a writ of *habeas corpus.* The following affidavit was filed in the superior court of the city and county of San Francisco, charging . the petitioner with contempt of court:—

"State of California,        )
"City and County of San Francisco. )   ss.

"William J. Dixon, being duly sworn, deposes and says that one Henry Bingham is the defendant in an action wherein the people of the state of California, upon the relation of Charles J. Swift, is plaintiff; that said action is now pending in the superior court of the city and county of San Francisco, state of California, and is still undetermined; that said Henry Bingham did interpose and file a demurrer to the complaint in said action, which said demurrer was, after full argument, on the second day of August, 1889, by the said court sustained, and on said last mentioned day the said plaintiff was given leave to amend his said complaint within ten days thereafter; that the time granted said plaintiff by said court to amend his said complaint has not yet expired; that one James H. Barry is the editor of a paper published weekly in the city and county of San Francisco, state of California, which said paper is called the Weekly Star; that on the third day of August, 1889, and while said action was then and there pending in said superior court, said James H. Barry did publish and caused to be published at the city and county of San Francisco, state of California, in the said paper, the Weekly Star, the following false, malicious, untrue, libelous, and defamatory matter of and concerning Honorable F. W. Lawler, judge of the superior court of the said city and county of San Francisco, state of California:—

"' A CRIMINAL JUDGE.

"'We charge Francis W. Lawler, judge of the superior court of San Francisco, with deliberate lying about the law, deliberate intentional falsification in his official capacity, and deliberate intentional denial of justice. He is not merely a fool, but an impudent rascal; a criminal on the bench. He ought to be impeached and removed from office, and disfranchised, indicted, and punished by fine and imprisonment; made a convict of. But our criminal machinery and our legislature are so often elected and used (just as Lawler acts), not to punish wrong-doing, but on purpose to protect it, that such a proceeding is hopeless. If the information which we have received is wrong, let the editors of the Weekly Star be at once arrested on a charge of criminal libel. We invite and defy Lawler to venture to defend himself even in a San Francisco court by this proceeding. We shall make the crime of this judge so plain, that even the wayfaring men, though fools, shall not err therein.

"' The case is this: A suit has been brought against Supervisor Henry Bingham, to determine whether he is entitled to the office of supervisor. This suit was assigned by the Buckley judge, Levy, to the other Buckley judge, Lawler (upon which every lawyer in town knew beforehand what Lawler would do, though they could not have foreseen just how he would begin to do it). When the case came up before Lawler yesterday, Bingham's attorney "demurred,"— that is, he said the superior court had [no] authority to try a case like this. In reply, the complainant's attorney showed that the constitution expressly provides that the superior court has jurisdiction over all such cases. And this impudent falsifier of the law and denier of justice, Francis W. Lawler, allowed the demurrer, absolutely giving for a reason that "although the constitution does give the superior court jurisdiction over all such cases, yet this is not all cases, but only one case, and therefore this court has no jurisdiction over it."

"'This seems impossible. But we affirm it to be true, and upon the affirmation we are deliberately taking the risk of being publicly dishonored unless Judge Lawler remains publicly dishonored. It is exactly as if the burglar Jimmy Hope had been discharged by Judge Toohy without trial on the ground that the "law only provided for the trying of all burglars, and therefore did not provide for trying this one,"'— . . . . with intent then and there unlawfully to interfere with the proceedings of a court of justice and to insult the said Francis W. Lawler, Esquire, judge of said court, in the discharge of the duties of his office, and to expose him to obloquy and contempt.                    W. J. Dixon.

"Subscribed and sworn to before me this ninth day of August, 1889.

"George H. Pippy, Deputy County Clerk."

Upon the affidavit being filed the matter was referred for hearing to Honorables William T. Wallace, J. McM. Shafter, and J. P. Hoge, judges of said court, who heard the same, found the petitioner guilty, and adjudged that he be imprisoned in the county jail for the term of five days and pay a fine of five hundred dollars.

The petitioner contends that there were certain defects in the manner of charging and bringing him before the court. But we think there were no such defects in the proceedings as would entitle the petitioner to his discharge.

Again, it is contended that the publication of the article above set out was not a contempt of court, because the case of *People* v. *Bingham,* therein referred to, had been finally disposed of, and therefore the language used could not in any way affect or interfere with the proceedings of the court in said action. But the affidavit shows that the action was still pending and undisposed of. A demurrer to the complaint had been sustained, with leave to amend. The time for amendment had not yet expired. A mere formal amendment might have

been made, and the same question as to the merits again presented. The language used was well calculated to in-timidate or improperly influence a timid judge, or one unduly sensitive to public feeling or censure.

It seems to us to be too clear for argument that the publication was made at such a time as to affect or have a tendency to affect the proceeding then pending in court, and this contention of the petitioner cannot pre-vail. The act complained of was an "unlawful interfer-ence with the proceedings of a court," and therefore within subdivision 9 of section 1209 of the Code of Civil Procedure. This being so, the citation of other author-ities to support the contention of respondent, that the publication of the article was a contempt of court, is un-necessary.

We do not understand the learned counsel for the petitioner to attempt to justify the language used in this publication, but much is said about the liberty of speech and of the press. It is said in broad language: "The liberty of speech and of the press *is unlimited and unre-strained upon all subjects whatsoever*, whether it be the de-cision of the court or the character of the judge. The only check upon this liberty is the responsibility for the abuse of it."

This may be true in the sense that the liberty to speak and write on any subject cannot be restricted or pre-vented in advance, and that the only remedy is to punish subsequently, for any publication that amounts to an abuse of such liberty. That is precisely what has been done in this case. If the language used was improper, but affected the judge in his individual capacity, and was not an interference with the proceedings of the court over which he was presiding, the remedy could not be by a proceeding for contempt. So the question is two-fold. Was the publication an abuse of the liberty of the press? and if so, was it an interference with the proceed-ings of the court? The last of these we have already

determined. As to the former, the liberty of the press to fairly criticise the official conduct of a judge or the decisions or proceedings of the courts, and to expose and bring to light any wrongful, corrupt, or improper act of a judicial officer, is one that should be carefully preserved and protected by the courts. If a public supervision and censure, through the press or otherwise, is necessary to suppress corruption and keep the channels of justice pure and untainted, the right to exercise such supervision, and to censure and expose wrong-doing, should be and must be upheld by the courts. But the publisher of a newspaper who assumes to criticise or censure a public officer or the proceedings of a court must know whereof he speaks. If he censures unjustly or charges falsely, he must be held strictly accountable. While his right of free speech is protected, his abuse of it must be punished. The great trouble with the freedom of the press at the present day, so far as it affects the courts, is that it is used indiscriminately in many cases, not with the laudable purpose of correcting abuses and exposing wrong-doing, but to gratify ill will and passion, or pander to the passions or prejudices of others. This tendency should be severely condemned and punished, not only for the protection of the courts and the preservation of a pure and independent judiciary, but as a means of upholding the liberty of the press in its true sense.

The publication complained of here was a most flagrant abuse of the liberty of the press, and was justly punished as such.

Certain technical objections to the proceedings of the court below, including the form of the judgment, are raised and discussed at some length, by the petitioner, but none of them are well taken.

Writ denied and prisoner remanded.

McFarland, J., Paterson, J., Fox, J., and Thornton, J., concurred.