### * LOUIS F. POST v. THE STATE OF OHIO.

1. INFORMATION TO BE FILED BY A PROPER REPRESENTATIVE OF THE STATE.

When the transactions constituting an alleged contempt of court are not within the personal cognizance of the court through his own senses, the better practice would seem to be to require an information to be filed by a proper representative of the state, specifying the transaction alleged to be contemptuous and permit the accused to file an answer to the charge made against him in such information.

2. RIGHTS OF THE ACCUSED.

In such prosecution, whether the transaction constituting the alleged contempt is brought into the record by information filed, or first entered on the journal of the court by order of the court before the arrest of the accused or any notice to him, the fullest opportunity should be given to him to show cause why he should not be punished for contempt, and his guilt should not be determined before such opportunity is given to him.

3. EVIDENCE TO MITIGATE THE OFFENSE.

In such action the accused is entitled to show by witnesses, that the facts referred to or recited in the article alleged to be contemptuous, occurred as therein stated. Such evidence is competent, as it tends to mitigate the offense, and is entirely proper to be considered in fixing the measure of punishment to be awarded.

4. PROOF THAT THE ARTICLE WAS NOT IN LAW CONTEMPTUOUS.

In such cause the accused in an endeavor to show why he should not be punished for contempt, has the right to show, if he can, that the article published was not in law contemptuous, and a refusal to hear counsel on that proposition is error.

5. NEWSPAPER CRITICISMS.

Newspaper comments though libelous, having relation to proceedings of a court which are wholly past and ended, are not in contempt of court nor the authority of the court to which reference is made.

HALE, J.

The record shows that the plaintiff in error was, in the court of common pleas, adjudged guilty of a contempt of court, and sentenced to imprisonment in the county jail for ten days, to pay a fine of $200.00, and costs of the prosecution, and stand committed until the fine and costs were paid.

In the bill of exceptions the entire proceedings occurring at the trial were brought into the record. A reversal of the judgment is sought, and several errors are assigned upon the record, and insisted upon as grounds for such reversal.

The alleged contempt of the plaintiff in error was in writing and causing to be published in *The Cleveland Recorder*, a newspaper of general circulation in this city, an article of which the following is a copy:

### "JUDICIAL AUTOCRACY."

"Perhaps no class of public officials are more in need of sharp criticism for their disregard of the amenities than judges. For this many reasons might be assigned.? Judges hold a position which makes them

* For decision of the court of common pleas, which this decision reversed, see 6 Circ. Dec., 200.

seem and often makes them feel like autocrats. Their commands are for the time being, law. They are invested with the autocratic power, lodged in no other official, of arbitrarily ordering men into prison—of being at once accusers, juries and judges. Power like this is calculated to impress those who exercise it with exalted notions of their authority and distorted ideals of judicial dignity. The ill effect is heightened when the worries of the court room sour the temper of the autocrat. Some judges then ignore the incidental obligations of their position. Forgetting that they are arbitrators bound to be gentle to everyone, and especially to be solicitous for the rights of all whose quarrels come before them, they play the part of the querulous pedagogue. Invested with a little brief authority, they use it as if no one's rights were superior to their whims.

"An example was furnished on Monday by Judge Lamson. For several days an attorney had danced attendance in Judge Lamson's court, waiting for one of his cases to be called for trial. Up to 3 o'clock on Monday the case had not been reached, and as only one hour more of the court day then remained, the attorney, reasonably assuming that his case would not be called before adjournment, left the court room to attend to other business. But by one of those accidents which neither lawyers nor judges can anticipate, the trial in progress suddenly ended, and the absent lawyer's case was called; whereupon Judge Lamson ordered it to proceed, without giving the attorney a chance to be heard.

"Conduct like this on the part of judges is wholly without justification. To begin with, it is inexcusable that a judge should keep lawyers and witnesses dancing attendance at court daily and all day for several days together awaiting the call of their cases : and when a lawyer, after dancing attendance, is placed in default because toward the close of a day he happens to be absent when the case on trial ahead of his comes unexpectedly to an end, the judge who orders the default deserves to be as openly criticised by the press as he is secretly criticised by the bar.

"Whether intentionally or peevishly, he thereby exposes indifference to the rights which he has been appointed to adjust.

"We are aware of the complaints of judges that lawyers abuse the courtesies of the bench regarding the calling of cases. But if the bench made reasonable rules upon the subject there would be no opportunity for abuses."

No affidavit or information was filed with the clerk of the court, but by order of the court there was entered on the journal of the court the following order or judgment.

"It having been brought to the attention of the court that on the 17th of March, 1897, the said defendant, Louis F. Post, did write and cause to be published in a certain newspaper known as *The Cleveland Recorder*, published in and of general circulation in the city of Cleveland and county of Cuyahoga, a contemptuous article of and concerning this court, and one of the judges of this court named in the article, then engaged in holding court in said city and county, and engaged in the trial of causes therein, and which contemptuous article is in the words and figures following, to wit then follows the article, and at the close, after the recitation of the article : ' it is therefore ordered by this court that an attachment issue for the person of said defendant, returnable before this court, sitting in court room No. 4 in the courthouse of this county, returnable on the 20th day of March, A. D. 1897, at 10 o'clock P. M.'"

It will be noticed that the plaintiff in error was not by this judgment or order required to appear and show cause why he should not be punished

for a contempt of the court, but apparently was adjudged guilty of contempt.

In pursuance of this order the plaintiff in error was arrested by the sheriff, and brought before the court. A motion was interposed by the plaintiff in error to dismiss the proceedings, on the alleged ground that no affidavit or information was filed with the court or clerk of the court, charging him with any offense, or specifying the transaction for which he was about to be tried. This motion was overruled, to which an exception was noted, and this is the first error assigned upon the record.

When the transactions constituting the alleged contempt do not come within the personal cognizance of the court through his own senses, as in this case, the better practice would seem to be to require an information to be filed by a proper representative of the state, and permit the accused to file an answer to the charge made against him in such information, and that all facts not within the personal knowledge of the court, should be establishd in open court upon the sworn testimony of witnesses, or other competent evidence, in the ordinary manner of other judicial investigations.

This precise point has not been determined, so far as we are aware, by any court of this state; but substantially the uniform practice in the cases reported, has been to require an information to be filed. While we are of the opinion that no affidavit was required or necessary, we do hold that the safer and the better practice is to require an information to be filed specifying the transaction alleged to be contemptuous, unless the court has personal knowledge of such transaction.

Holt's case, 55 N. J. L., 384, is in point. The defendant in that case had been adjudged guilty of a contempt in a summary proceeding, and sentenced to fine and imprisonment. No affidavit and no information had been filed. On review, the supreme court, of that state, in discussing the matters made upon the record, say: "On this occasion we have no concern with any part of the transaction except such as relates to the course of procedure that was adopted. This was of the simplest kind possible. An attachment was issued, resting on no legal basis whatever, for there was no affidavit or other proof. The court acted *ex mero motu,* assuming as a part of its judicial knowledge that the abusive article existed in point of fact: that it had been published in a certain newspaper and that the defendant was responsible in some way for the existence of the libel or for its dissemination. Such a step was altogether abnormal and illegal.

"Nor did the procedure improve as it progressed. The defendant, upon being taken into custody gave bail, and in due course appeared before the court, and through his counsel moved to set aside the attachment and all proceedings founded upon it, on the ground that the same was issued without any legal evidence or proof of the fact therein recited. This motion was overruled and the court, without proof and again of its own motion, proceeded at once to judgment, laying a fine of one thousand dollars and cost on the defendant, and directing the imprisonment until the payment of such moneys. Thus, from first to last, the members of the court were the accusers, witnesses and judges; they took no testimony, but convicted the defendant from their own intuitive knowledge.

"It is not necessary to say that such a course has not in any respect whatever the least semblance of a proceeding in a court of law. The arrest and conviction were altogether arbitrary and illegal."

We have been unable to find any statute in the state of New Jersey similar to section 5639, under which this prosecution was instituted; however there is no doubt that the power to punish for contempt is inherent in a court of general jurisdiction independent of legislation, and has always existed in the courts of England and in this country. No court can exist without it. The legislature may regulate the procedure under this, but they can in no way abridge that power of the court. And such is the language and doctrine of our own supreme court. But in New Jersey there is a statute providing that proceedings of a summary character for contempt may be reviewed on error, as in this state. Our statute is but a declaration of the common law upon that subject, and the case cited is clearly in point in the case at bar.

The supreme court in the case of *Myers* v. *The State*, reported in the 46 Ohio State Reports, 473, in the *per curiam* opinion on page 492, say: "When the court assumed to take judicial notice of the fact which formed the ground of a previous proceeding for contempt against respondent, and of his being adjudged guilty, we think the court erred. If the facts were competent to be taken into consideration, which is, at least, very questionable, they were subject of evidence, and could not be judicially noticed." So that the procedure seems to be sanctioned by the supreme court in that case, that facts not within the personal knowledge of court should be established and brought into the record in the ordinary way by proof upon sworn testimony that is competent.

We desire, however, to add, that in any event, whether the transaction constituting the alleged contempt is brought into the record by information filed, or first entered on the journal of the court by order of the court, before the arrest of the accused, or any notice to him, the fullest opportunity should be given to him to show cause why he should not be punished for contempt; and his guilt should not be determined before such opportunity is given to him.

After the overruling of this motion, the plaintiff in error prepared and asked leave to file an answer to the charges made against him, but his request was refused, and an exception noted.

These proceedings were brought under section 5639 of the Revised Statutes, which reads, "A court or judge at chambers may punish summarily a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

It will be observed that for the violation of this section of the statute under which these proceedings were instituted, the punishment is wholly within the discretion of the court. The statute fixes no limitation to the punishment to be imposed upon the defendant. A proceeding to punish for contempt of court under this section, including the question whether or not the court in awarding a punishment has exercised a reasonable discretion, may be reviewed on error. And this is held in the case of *Myers* v. *The State* previously referred to.

All the facts and circumstances therefore, entering into and surrounding the transaction, were competent to be given in evidence. The answer contained allegations of facts clearly proper to be considered by the court, as well as denial of some of the charges made in the journal entry referred to. And in refusing permission to file this answer we think the court erred. A copy of this answer is contained in the record.

Post v. The State of Ohio.

On the trial the plaintiff in error called as a witness one Ward, and offered to show by him, in substance, that the facts referred to or recited in the article alleged to be contemptuous, occurred as therein stated. And this testimony was excluded.

We think this testimony was competent, if not establishing a complete defense, it certainly tended to mitigate the offense, and was entirely proper to be considered in fixing the measure of punishment to be awarded. Nor is this testimony rendered incompetent because the plaintiff in error was claiming it to be a complete defense, and not merely in mitigation of the offense.

In a case reported in 131 Indiana it was held that in proceedings in contempt, where the accused files an answer disclaiming any intention to interfere with the prerogatives of the court, or any disrespect to the court, unless the article is libelous *per se*, it is a complete justification, and the proceeding should be discontinued and dismissed.

We are not disposed to go to that extent, nor will we in the disposition of this case. But it clearly is an authority showing that the answer proposed to be filed was perfectly proper.

At the close of the testimony, counsel proceeding to argue the case upon the law and the facts, was interrupted by the court with this inquiry: "What proposition do you propose to discuss?" Counsel or the accused said: "For myself, I intend chiefly to discuss the question as to the jurisdiction of the court: *First*, as to the form of the record, and the proceedings that have been had; and *second*, as to the matter complained of being in law susceptible of being contemptous." "The Court: That I would not hear you upon. When the court issued the writ in this case, it prejudged the language of the article to be contemptuous."

It seems to us that it was the right of the plaintiff in error, in showing cause why he should not be punished for contempt, to establish, if he could, the fact that the article published was not in law contemptuous. And it was not in accordance with ordinary precedent to refuse him a hearing on that proposition, for the reason that the court before the issuing of the order of attachment had judged the article to be contemptuous.

We are, however, not prepared to say that this refusal to hear counsel would be error, if the conclusion reached was correct. I mean prejudicial error and the law rightly interpreted. But, considering the nature of the article and the circumstances of the refusal, we think the court erred in refusing to hear counsel.

The suggestion made that the court before the issuing of the citation must settle definitely the law of the case, so that any consideration of that subject after the arrest and appearance of the defendant could not be considered, has but little weight with the court. All propositions of law and fact necessary to the conviction and punishment of the defendant should be open to discussion after the arrest, in the presence of the accused, in the judgment of this court.

So far we have considered propositions relating simply to the procedure had. If we stopped here, the case would go back for retrial. We have therefore considered the important question in the case, and that is, whether the article was in law contemptuous. Two classes of cases involving the publication of newspaper comments upon proceedings in court have been considered in contempt proceeding; those in which it is claimed that the object of the publication was to affect the decision of a pending cause or action second, those which have for their apparent purpose the

bringing of courts or judges, or other officers constituting an essential part thereof, into discredit.

It is held in many of the states that newspaper comments, however libelous, having relation to proceedings which are past and ended, are not in contempt of court or the authority of the court to which reference is made. I refer to only a very few cases : A case reported in the 50 American State, 538, and 45 Nebraska, 568, in which that court held that a newspaper publication is a contempt of court only when it has reference to matters then pending in court, and is of a character tending to the injury of pending cases and subsequent proceedings upon such matters. This related to a proceeding in a criminal case. In a case reported in the 40 Iowa, 307, it is said that criticism of court in a case determined is not contemptuous. The same holding was had in 110 Indiana, 301. In 48 N. H., 428, the publication in this case related to a case then pending. It was a severe criticism of the methods employed in the prosecution under the liquor law of that state. After some discussion the court reaches the conclusion that the article was contemptuous, but adds : "It must not be inferred that we question the right to criticise and censure the conduct of courts and parties, when causes have been finally decided. The question in this case is whether publications can be permitted which have a tendency to prejudice the decisions of pending cases." To a similar effect is 79 Ill., 45 ; 85 Cal., 603 ; and in our own state, the case of *Myers* v. *The State*, 46 O. S., 473, the court in disposing of the case say :" Though the libel was, in large part, against the presiding judge, that fact did not disqualify him from trying the proceeding in contempt. It was not the libel against the judge which constituted the offense for which the respondent was liable as for contempt of court. The offense consisted in the tendency of his acts to prevent a fair trial of the cause then pending in the court. It is this offense which constitutes the contempt, and for which he could be punished summarily ; and the fact that in committing this offense, he also libeled the judge, and may be proceeded against by indictment therefor, is no reason why he may not and should not be punished for the offense against the administration of justics.

"The statute clearly authorizes, as did the common law, courts to punish summarily, as contempts, acts calculated to obstruct their business. They could not be maintained without such power, nor could litigants obtain a fair consideration of their causes in a court where the jury or judge should be subject during the trial to influences in respect to the case upon trial, calculated to impair their capacity to act impartially between the parties."

This is a statement of the whole court in a *per curiam* opinion, and is entitled to much weight. It is apparent to us, that this language of the court was intended to, and the court does hold that the libels upon the court which do not relate to cases pending, are not a contempt, and concur with the adjudications in those states which so hold.

The article alleged in this case to be contemptuous so far as it attempts to state facts, has a reference to a transaction wholly past and ended. The article, it is true, in some respects is unjust and unreasonable. The writer had no just appreciation of the subject upon which he was commenting. The statute provides that causes shall be tried in the order in which they stand upon the docket. This is provided by the Revised Statutes, section 5134. They are placed upon the docket in the order of time in which the issues are made up. The trial court, in proceeding with the trial of his cases on his docket, is not responsible

for the preparation of the cases next to be reached for trial; nor can he fix the exact time in which a case will be reached for trial. Counsel representing the parties of the case next to be tried, must necessarily exercise their own judgment in the preparation of their case. No rule can be devised by which a court can know whether the case on trial will or will not come to a sudden termination. Counsel do not "dance attendance" to the court but in their own way prepare to go forward with their case when reached in its regular order. No rule ever was or ever can be devised by which a trial court can be kept busy, and witnesses called only for the moment when they are needed. It may well be doubted whether, under the requirements of the statutes, better or more just rules can be adopted than those provided by the court of common pleas. But whether that be so or not, it is beyond dispute that these rules are adopted by an intelligent bench for the purpose, and the purpose only of facilitating the business of that court, protecting the rights of the litigants and of the people. Under the Code of Civil Procedure in this state causes are commenced by filing a petition with the clerk of the court; issues made up, the cause placed upon the docket for trial; if a law case, tried to a jury, and a verdict rendered. On the rendition of the verdict the statute provides for immediate rendition of judgment. The Revised Statutes, section 5326, provides that when a trial by a jury has been had, judgment must be entered by the clerk in conformity with the verdict, unless the verdict is special, or the court order the case reversed for further argument or consideration. After the trial, judgment and verdict, certain proceedings may be had; for the most part proceedings after judgment. With the judgment upon the verdict the case ends, unless there shall be a reexamination of some part of the proceedings already had.

The theory that, although the trial had ended, the time within which a motion for a new trial could be made had not expired, and therefore the case was pending in court, has but little weight. There is not the slightest intention disclosed in the language of the article to in the least degree influence or embarrass the court in the disposition of such motion, if one should be made. We doubt if the writer knew that such motion could or was to be filed or made.

The tendency of the article was not to embarrass the court in the disposition of the case then pending before the court. A considerable part of the article was general in its terms, and intended to and was a criticism upon all judges and their methods. And a single transaction of one judge was stated and commented upon. In both the general discussion and in the specific instance referred to, the reference was to a past transaction, to matters done and ended. It will not be claimed that the publication of this article had or could have had the slightest influence on the judge named therein, in the disposition of a case then pending, or in any way embarrass him in the disposition of any case thereafter to be tried. It did not, therefore, within the meaning of the statute, in the judgment of this court, obstruct the administration of justice. It was an unjust criticism of a faithful and upright judge, but not a contempt of court.

The judgment of the court of common pleas will be reversed, and the plaintiff in error discharged.

Messrs. *Johnson & Hackney* and *Blandin & Rice*, Attorneys for Plaintiff in Error.

*T. L. Strimple*, Prosecuting Attorney, for Defendant in Error.