[Crim. No. 1924.   First Appellate District, Division Two.—October 14, 1936.]

In the Matter of the Application of PHILIP REILLY for a Writ of Habeas Corpus.

Raine Ewell for Petitioner.

Earl Warren, District Attorney, R. H. Chamberlain, Assistant District Attorney, and James H. Oakley, Deputy District Attorney, for Respondent.

STURTEVANT, J.—This is an application for a writ of *habeas corpus* and the petitioner seeks to have a judgment

declaring him guilty of contempt of court declared void. His attack is twofold. In the trial court an affidavit was filed in which he was charged with having committed a constructive contempt of court. An order to show cause was served on him, he appeared, filed a demurrer attacking the sufficiency of the said affidavit, and he also filed an answer thereto. At the same time he filed an affidavit alleging that it appeared probable that by reason of bias or prejudice of the trial judge a fair and impartial trial could not be had before him. ▮ As the petitioner discusses the second proposition first we will take it up first.

After the petitioner's affidavit alleging prejudice was filed the trial judge, Judge Frank M. Ogden, one of the judges of the Superior Court of the State of California in and for the County of Alameda, filed an affidavit denying bias or prejudice. The parties having failed to agree on a judge to hear the charge of disqualification the Judicial Council appointed the Honorable Maurice T. Dooling, Judge of the Superior Court of the State of California in and for the County of San Benito, to hear said charge. A hearing was had on August 27, 1936. An examination of the transcript of said proceedings discloses that there was no evidence introduced showing any statement or remark by Judge Frank M. Ogden ever made of or concerning this petitioner, nor of or concerning the ''Free Press'', the periodical in which the alleged contemptuous article appeared. There was some evidence to the effect that in other issues of the ''Free Press'' on former occasions four different articles derogatory of Judge Frank M. Ogden had appeared. The latter testified that prior to reading petitioner's said affidavit alleging the disqualification of him he had never seen two of said articles and that the other two were published during one of his campaigns and he then considered, and at the time of the hearing he considered, that petitioner had a right to form his own opinion of candidates and to publish his opinions if he saw fit to do so. He further testified that as to certain facts stated in said articles the writer was mistaken.

Before his election as judge, Judge Frank M. Ogden had been a deputy in the office of Mr. Earl Warren, who was then and is now district attorney of Alameda County. For many years, from time to time, attacks were made in

the "Free Press" on Mr. Warren. Judge Ogden testified he had heard of such attacks and resented them, but he had never read any of said articles and that he conceded the right of anyone to disagree with or to criticize anyone else and such facts would not cause him to be biased or prejudiced in the trial of a proceeding to which either of such persons might be a party.

As to the charge that he had been active in prosecuting and framing the charge of contempt, Judge Ogden testified to the facts, which showed he had directed the foreman of the grand jury to present the matter and he had discussed with the deputies in the district attorney's office how the papers should be entitled, but further than that he had taken no part.

The petitioner cites and relies on *Briggs* v. *Superior Court*, 215 Cal. 336 [10 Pac. (2d) 1003]. We think it is sufficient to state that the facts above recited furnish no basis for applying to this case the doctrine of the case cited. Moreover, we have read the record in this case from cover to cover and we have tried to recite every single fact which has the semblance of indicating bias or prejudice as claimed by the petitioner.

We will pass now to the facts out of which the charge of contempt arose. In June, 1935, department five of the Superior Court of the State of California, in and for the County of Alameda, impaneled a grand jury. That body has acted as such ever since and is now acting. Peter H. Hoar and Anna C. Law are members of that body. Commencing in the month of June and continuing down to nearly the present time the said grand jury had under consideration certain charges against the manager of the city of Alameda. B. Ray Fritz was at the time the investigation commenced the manager of Alameda. During the same period the grand jury had under investigation certain complaints regarding the administration within Alameda County of the affairs of the state board of equalization involving violations of law by certain officers and employees of said state board of equalization. One of such officers and employees of said board was Michael Connolly. On June 25, 1936, two indictments were returned against B. Ray Fritz. On July 9, 1926, an indictment was returned against Michael Connolly. But said investigations were

not completed and had not been completed on July 14, 1936. However, on the date last mentioned a periodical, ''Free Press'', published an article in words and figures as follows, to wit:

## ''A Grand Farce

''It is not generally known but it is a fact nevertheless, that, Grand Jurors and committing magistrates are liable for maliciously issuing indictments, or binding persons over to the Superior Court on flimsy testimony framed by country lawyers trying to build up a reputation. Ignorance of the law is no excuse even for Warren, well-known as an ignoramus despite his Masonic plumage, and his political support coming from that notorious crooked gang of fakers who have never hesitated to steal. In the case of City Manager Fritz hounded to death by that notorious thieving gang on the payroll of the Gas Company all because he dared attempt to stop their graft he will have a comeback. This brainless gang of imbeciles among them Pete Hoar and Anna Law, brought in a flock of indictments against Fritz charging perjury on the statement of a self confessed perjurer. The law is plain in this case, there must be corroborating testimony. Just take the two 'Yes Men' and see how clean their skirts are, Anna, she just loves to wear the other fellow's panties, she did try to put over several deals on the purchase of property for play grounds. Auditor Williams caught them red handed and how he kicked the pants of the gang until there was nothing left in the way of a cut. The Cisco property died in the attempt, since then the political boss is known as Cisco Annie. A damage suit against Peter Hoar, the millionaire would be more interesting, he has something substantial while about the only thing of value Anna has left is, Herbutt, the handy man who can drive a Hennery home to roost with one arm, while the other was wrapped around the midget boss. It would be interesting to hear Mr. Hoar explain why neighboring cattlemen assisted him in his round up for the last several years. Of course there is a reason, that is not entirely youthful errors.

''Then there is the Mike Connolly case. Just because a big mouthed imbecile and his flunky grand jurors have been able to fool the half wits privileged to vote, there might be a story to tell that would change the entire complexion

under a new law that goes to show the difference between right and wrong. A judgment against grand jurors would be terrible?''

▮ The petitioner contends there was no proof that he wrote the article complained of or published it. In that connection he complains because a copy of the issue of July 14, 1936, of the "Free Press" was received in evidence. Before said copy was received in evidence witnesses had testified said issue, and other issues of said paper printed during the last two years, were printed for, paid for, and delivered to petitioner or his order. Each issue was six thousand to seven thousand copies. In the affidavit on which the order to show cause was based it was alleged, "That said edition of said newspaper was immediately after its said publication, freely circulated among the members of the general public in Alameda County." That allegation was not denied but was admitted by the petitioner. When the foregoing evidence was introduced the petitioner, although present at the hearing, did not take the stand nor did he introduce any evidence whatever. When the record so stood the complaining witness offered said copy of said paper and it was received in evidence. At the top and in the left-hand corner of page two of said copy there is printed: "Free Press. Philip Reilly—Editor and Publisher." Under the circumstances just recited the trial court made a finding that the allegations of paragraph VI were true. Said paragraph alleged: "That affiant is informed and believes and on such information and belief alleges the fact to be, that said Philip Reilly, as editor and publisher as aforesaid, himself personally published, and being in charge and control of said publication, permitted to be published said article as aforesaid." This court is wholly unable to state there was no evidence before the trial court sustaining the allegations contained in said paragraph. As to who was the publisher of "Free Press" was a fact which, like any other fact, could be proved by indirect evidence or by direct evidence. (*Globe Automatic Sprinkler Co.* v. *Braniff*, 89 Okl. 105 [214 Pac. 127, 129].)

▮ In the affidavit on which the order to show cause was based, there were appropriate allegations to the effect that said article was addressed to and intended to affect

said investigations mentioned above. Those .allegations required the trial court to construe the language contained in said article in connection with all of the circumstances. It found said allegations to be sustained. Again it may not be said in the exercise of a sound discretion it did not properly construe said language.

The petitioner contends the affidavit on which the order to show cause was issued failed to state facts sufficient on which to predicate a charge of contempt. He asserts that the published article did not on its face mention the said grand jury of Alameda County or its official acts. That is so, but it specified such facts and mentioned such names that the trier of the facts was warranted in inferring that the said article was meant and intended to refer to said grand jury and its acts. He then asserts that no facts were alleged showing the investigations of the grand jury had not been completed. The affidavit contained a direct allegation to that effect. More was not necessary. Again, it is claimed that facts are not alleged showing the legal impanelment of the grand jury. No authority is cited to the effect such allegations were necessary. The alleged contempt was of the court, not the grand jury. The affidavit was sufficient. (*Ex parte Barry*, 85 Cal. 603 [25 Pac. 256, 20 Am. St. Rep. 248] ; *McDougall* v. *Sheridan*, 123 Idaho, 191 [128 Pac. 954, 963] ; *Ex parte Lindsley*, 75 Cal. App. 122 [241 Pac. 934].) The alleged facts show that a body was claiming to be the duly impaneled and acting grand jury of Alameda County. That is, it was at least a *de facto* grand jury and that was sufficient for all of the purposes of this proceeding. In this connection the petitioner claims as the grand jury was impaneled June 16, 1935, it had ceased to be a legal body. The point has no merit. (*Halsey* v. *Superior Court,* 152 Cal. 71 [91 Pac. 987].) It is said the affidavit was defective because it contained one allegation made on information and belief. That point is not an open one in this state. It has been decided against the contention which the petitioner now makes. (*Ex parte Acock*, 84 Cal. 50, 54 [23 Pac. 1029] ; *Ex parte Brown*, 66 Cal. App. 534, 537 [226 Pac. 650].)

The writ is discharged and the petitioner is remanded to the custody of the sheriff of Alameda County.

Nourse, P. J., and Spence, J., concurred.