.William D. Beckett v. State of Nebraska.

Filed October 6, 1896.   No. 8008.

1. Contempt: Proceedings: Review. Proceedings for contempt of
   court are, in this state, in their nature criminal, and governed by
   the strict rules applicable to prosecutions by indictment; hence
   presumption and intendments will not in such cases be indulged
   in order to sustain judgment of conviction. (*Hawes v. State*, 46
   Neb., 149.)

2. ————: ————: ————. Where, although the alleged contemptuous
   acts are committed *in facie curiæ*, and, therefore, punishable sum-
   marily without the formality of a trial or hearing, witnesses are
   by the court called and examined touching the transaction in-
   volved, the prosecution will, for the purpose of review by means
   of proceedings in error, particularly where the record is ambigu-
   ous, be construed as one for a constructive contempt, in which the
   accused is entitled to be heard in his own defense.

Error to the district court for Douglas county.  Tried
below before Scott, J.

*Read & Beckett* and *H. J. Davis*, for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day,
Deputy Attorney General,* for the state.

Post, C. J.

The first and most serious difficulty encountered in
this cause is to determine the character of the proceed-
ings below, which resulted in the conviction of the plaint-
iff in error on the charge of contempt of court.   The re-
citals of the judgment appear to sustain the contention of
the attorney general, in behalf of the state, that the pros-
ecution was for an offense committed in the presence of.
the court and, therefore, a direct contempt.   On the other
hand, the evidence in the bill of exceptions tends quite as
strongly to sustain the claim of the plaintiff in error, that
the proceeding was for a constructive contempt and tria-
ble as such.  Four witnesses were called, and, in answer

to interrogatories by the court, gave evidence in detail concerning the conduct alleged as the foundation for the prosecution, one of whom, Mr. Britt, thus graphically relates what transpired on that occasion.

"Court was in session.  Mr. Beckett [plaintiff in error] was there, and Mr. Keller and Mr. Wilgocki, and they were talking about the injunction in the Poor Farm case— talking for some time, and the court stated that he had decided not to grant the order, and. Mr. Beckett stated that the court had informed him that before he would do so, he would hear him.  The court said that was not so, and Mr. Beckett said it was so.  The court repeated again that it was not so, and Mr. Beckett rose to his feet and slammed his fist on the table and said it was so—that he had said so.  The court rose to his feet and told him he would not allow anybody to insult him in his own court room and ordered him to leave the court room.  Mr. Beckett said he would not leave the court room, and started toward the court.  The court then ordered the bailiff to take him from the room, and Mr. Savage [the bailiff] started to do so.  He grabbed hold of Mr. Beckett and they struggled for a moment or two and Mr. Keller interfered and separated them and told Mr. Beckett to leave the room, and held Mr. Savage away from him.  Mr. Beckett left the room, and that was about all that occurred."

The Court: "What did you see in regard to Mr. Beckett trying to get at the court with clutched fist?"

Answer: "When the court ordered him to leave the room he started right directly toward the court with his fist clenched.  It looked as though he meant to do him harm."

Upon the conclusion of the testimony adduced at the instance of the court leave was sought by the plaintiff in error to introduce evidence in his own behalf, which request was denied and which ruling is now assigned as error.

This court has long recognized the distinction between

proceedings for direct contempts and for those acts which, although not committed in the presence of the court, tend to embarrass or prevent the due administration of the law and which are known as constructive contempts. The offense in the one class of cases, being committed *in facie curiæ*, is punishable without indictment or information, and without the formality of a trial or hearing of any kind, while in the other class of offenses a formal charge is required, with an opportunity for the accused to be heard in his own behalf. (See *Gandy v. State*, 13 Neb., 445; *Cooley v. State*, 46 Neb., 603.) If, therefore, this proceeding was one for a constructive contempt,—if the finding and judgment complained of are predicated, not upon what was seen and heard by the judge himself, but upon the testimony of witnesses to the transaction,—it was error to deny the hearing demanded. We understand the attorney general to concede that if the conduct alleged was by the district court treated as a constructive contempt, the effect of the ruling assigned is to deprive the accused of a substantial right, and is accordingly indefensible in this proceeding.

The judgment is, however, defended upon the ground that the prosecution was in fact for a direct contempt, and that evidence was received merely to preserve a record of the transaction involved for the enlightenment of the public and in vindication of the judge's action in the premises. But that view of the record should, we think, be rejected for two reasons: (1.) Proceedings for contempt are in their nature criminal and governed by the strict rules applicable to prosecutions by indictment; hence presumptions and intendments will not in this class of cases be indulged in order to sustain judgments of conviction. (*Hawes v. State*, 46 Neb., 149, and cases cited.) (2.) Assuming a proposition not decided, viz., that the foregoing contention finds support in the recitals of the transcript, such recitals are foreign to, and contradictory of, the record proper. That the record made by the trial court imports absolute verity for the purpose of appeal or re-

view by means of petition in error, is elementary law; but that rule, for obvious reasons, embraces such matters only as are pertinent to the controversy below, and has never, so far as we are advised, been held applicable to matters wholly foreign to the issues or to entries non-judicial in character, whether made voluntarily by the clerk or under the direction of the judge.

But we are, to amplify within logical bounds the argument of the attorney general, asked to sanction the proposition that the swearing and examining of witnesses in open court was, in this case, a solemn farce, and that the sole purpose of such judicial mimicry was to justify, through the medium of the press, a finding and judgment uninfluenced in the slightest degree by the evidence thus received,—an assumption as unjust to the learned district judge as the motive thereby implied would be unusual and reprehensible. Granting, as has been said, that the record is ambiguous in respect to the character of the proceeding below, we prefer, instead of the alternative mentioned, to adopt that construction which, although leading to a reversal of the judgment, imputes to the trial court an orderly disposition of the business before it, in accordance with judicial methods. It is probable that the record, which evinces a less degree of care in its preparation than might be expected in view of the source from whence it comes, fails to fairly indicate the position of the district court; but, upon the case here presented, the accused should, we think, have been permitted to purge the contempt, which the proof certainly tends to establish, and the denial of that right is error requiring a reversal of the judgment.

Reversed.