BEE PUBLISHING COMPANY v. STATE OF NEBRASKA.
VICTOR ROSEWATER v. STATE OF NEBRASKA.

FILED NOVEMBER 17, 1921. Nos. 21314, 21315.

1. **Contempt:** REMITTANCE OF FINE. The editor in chief of a metropolitan daily newspaper, owned by a defendant corporation, was joined with the corporation in a contempt proceeding, both being

charged with having caused the publication of an article that tended to obstruct the due administration of justice in a suit then pending and undetermined in the district court. Both defendants were found guilty. It appearing that a fine of $1,000 was imposed upon the corporate owner of the newspaper, and that the editor had no knowledge of the objectionable article until after its publication, and the fact that this is his first offense, *held*, to be such mitigating circumstances as to justify a remittance of the fine imposed upon the editor.

2. ——: AFFIRMANCE. The corporate owner of a metropolitan newspaper published an article respecting a criminal prosecution, then pending in the district court and undetermined, which took sides as between the state and the defendant. The article declared the innocence of the accused and indulged in violent comment respecting the evidence. Derogatory statements were made with respect to the credibility of the state's witnesses. The newspaper was published in the county seat and had an extensive circulation throughout the state and in the city and county of its domicile, the vicinity from which the jurors in the case should be drawn. *Held*, that in a proceeding for contempt the court did not err in imposing a fine upon the publishing company.

3. ——: PROCEEDINGS CRIMINAL IN NATURE. "Proceedings for contempt of court are, in this state, in their nature criminal, and governed by the strict rules applicable to prosecutions by indictment; hence presumption and intendments will not in such cases be indulged in order to sustain judgment of conviction." *Beckett v. State*, 49 Neb. 210.

4. Constitutional Law: FREEDOM TO WRITE: QUALIFICATION. The freedom that is guaranteed by the Constitution to freely write and publish on all subjects is qualified by the provision that imposes responsibility for the abuse of that freedom.

5. Contempt: FREEDOM OF THE PRESS: COURTS. The right of the courts to impose punishment for contempt, arising from an abuse of the freedom of the press, as relating to causes pending in court and undetermined, is universally recognized.

6. ——: ——: ——. The law will not suffer punishment to be imposed for a free expression of such criticism as a person or a publisher may entertain for the decisions of the courts.

ERROR to the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed in part, and affirmed in part.*

*Rosewater, Cotner & Peasinger* and *W. J. Connell*, for

plaintiffs in error.

*Clarence A. Davis, Attorney General, Abel V. Shotwell, County Attorney,* and *C. L. Dort, contra.*

Heard before MORRISSEY, C.J., DEAN, FLANSBURG and LETTON, JJ.

DEAN, J.

On November 11, 1919, the Bee Publishing Company, a corporation, Victor Rosewater, and John H. Moore, defendants, were jointly informed against by the county attorney for Douglas county, under section 8236, Rev. St. 1913, and charged with a wilful attempt to obstruct the proceedings and hinder the due administration of justice in a suit, then lately pending and undetermined, by the publication of a certain article in the Omaha Sunday Bee, November 9, 1919. Moore was acquitted, but the Bee Publishing · Company and Rosewater were both found guilty of contempt and were each separately fined $1,000 and costs. They have brought the case here for review.

The exhibits and the evidence tend to show that the facts out of which this suit arose, and which form the basis of the newspaper story in question, are substantially these:

On the afternoon and night of Sunday, September 28, 1919, the Douglas county courthouse in Omaha was beset by a riotously assembled mob made up of several thousand persons who came together for the unconcealed purpose of lynching an inmate of the jail, who was suspected of having made an attempt to commit a heinous offense against a defenseless woman. The mob overpowered the police force and other of the city officials, all of whom were assisted by many law-abiding citizens, but to no avail, in an endeavor to restore order. The object of the mob's fury was seized and lynched, the courthouse was fired and in large part destroyed, and with it most of its contents, before the mob dispersed. Within a short time after the fire, namely, November 6, 1919, John H. Moore, a Bee reporter, was indicted by a grand jury specially called by the district court to inquire into the facts lead-

ing up to and connected with the riot and the fire. The indictment charged Moore with conspiring with others to commit arson. Two boys, named Morris and Thorpe, were suspected of being implicated in the riot and were arrested. While under arrest they testified before the grand jury and informed that body that they saw Moore, on the afternoon of the riot, leading a gang of boys to the courthouse, carrying gasoline and oils for the purpose of aiding in the conflagration. It was mainly on this evidence that the indictment against Moore was based.

Subsequently, and while the Moore case, pursuant to the indictment, was pending and undetermined in the district court, Morris and Thorpe furnished affidavits which in effect stated that their testimony before the grand jury with respect to Moore was false, and that it was obtained by coercion and intimidation practiced upon them, while under arrest, by certain members of the Omaha police force, and by promise of immunity from prosecution. The article that is set out in the information and that appears as an exhibit in the Omaha Bee of Sunday, November 9, 1919, and other like exhibits, purport to give an account of some of the circumstances attending the fire and the alleged unfair methods under which the testimony that implicated Moore was obtained. The article, or newspaper story in question, covers about two columns of the newspaper exhibit of Sunday, November 9, and about six pages of legal cap in the information. It is too extended to be fully reproduced in this opinion.

The following headlines that precede the article that is incorporated in the information are in large display type:

"Boys Disclose the Frame-up—Promised Freedom by Police—Captain Haze Offered Liberty to Prisoners for False Testimony Before Grand Jury, They Declare in Affidavits—Rotten Police Methods Laid Bare by Youths—Admit They Never Saw Bee Man They Testified Against Until After Case Had Been Framed by Detectives." The excerpts in ordinary brevier type follow:

"Captain of Police Henry P. Haze 'framed up' the

malicious and false testimony submitted to the grand jury upon which J. Harry Moore, reporter for the Bee, was indicted Friday, on a charge of conspiracy to commit arson in connection with the riot of September 28th. This statement was made to a reporter for the Bee, in the county jail yesterday by Ernest Morris and Harold Thorpe, confessed members of the mob, upon whose evi- dence the indictment against the reporter was returned. Both Morris and Thorpe made affidavits to the effect that Haze prevailed upon them to perjure themselves in order to convict Moore, whose investigations as a newspaper man have resulted in sensational and startling revelations against the Omaha police department, upon a promise that they would not be required to serve their full sen- tences in jail for rioting. * * * They were told they would be released from jail as soon as the reporter had been tried and sent to the penitentiary. When the boys told Captain Haze they never had laid their eyes on the Bee reporter, the policeman replied that he would ar- range it so they could see the man."

The article goes on to say that the boys changed their minds, and that Morris informed a reporter that after they got to thinking about it in jail they agreed they "did not want to be a party to a frame-up on an innocent man," and decided to "expose Captain Haze and the other detective." The writer of the article then observed that the other witness who testified against reporter Moore be- fore the grand jury was a notorious bootlegger and a former policeman. Then follow the affidavits of Morris and Thorpe, that were printed as a part of the objection- able article, that purport to substantiate the foregoing statements, and many other statements of like import that appear in the article in question. Besides the foregoing excerpts, the article elsewhere, as it appears in the in- formation, proceeds to vilify the police department gen- erally, and the police officers who testified before the grand jury, and who would of necessity be witnesses at the coming trial against Moore in the district court. It

proceeds to say that whether the police commissioner or the chief of police "had a hand in the frame-up on the reporter (Moore) Morris and Thorpe were unable to say." Continuing, the article observed that the commissioner always approved of Captain Haze's methods, and that the chief of police was known to have offered to promote a certain police officer if he succeeded in "getting" the Bee reporter.

Taylor Kennerly was the managing editor of the Bee when the objectionable article was published, and as the head of the editorial department he directed the news policy of the paper. He said that Rosewater never gave him any orders with respect to his work, and if he, the witness, was absent the city editor or the news editor determined what articles should appear. He testified that as a general proposition a communication or a reporter's story, before publication, was edited by either one of six or seven men called copy readers, day editors, night editors, or telegraph editors.

It plainly appears that the article seriously reflected upon the integrity of the witnesses who appeared before the grand jury and who would in all probability testify in the district court. It took sides as between the state and the defendant, and opinions in respect of the merits were expressed. Violent comment was indulged in respecting the evidence, and the innocence of the accused was declared. Upon its face it is apparent that a bold attempt was made to mold public opinion favorable to Moore in advance of his trial, the Bee having an extensive circulation, not only throughout the state, but in the city and in Douglas county as well, the vicinity from which the jurors would be drawn and before whom Moore would be subsequently tried. Clearly an inflammatory harangue, in the locality where the trial was to be had, so worded, would tend to hinder the due administration of justice. That a publication so worded and so circulated, under the circumstances that prevailed at the place of its publication, constitutes constructive contempt of court is well

settled.  6 R. C. L. p. 508, sec. 20, p. 509, sec. 21.

The state contends that Victor Rosewater, as editor in chief of the Omaha Bee, was properly chargeable with knowledge of the matter that appeared in its columns, and that the fact that he did not know of the existence of the objectionable article until after its publication should not relieve him of liability therefor.  In the absence of mitigating circumstances there is merit in the argument.  In the exercise of the police power it has frequently been held permissible to inflict punishment upon a person for the commission of an unlawful act by his agent, even though the principal was unaware that the act was being committed, and in some instances punishment has been imposed when the agent has been expressly directed to refrain from the commission of the proscribed · act.  An illustration, now less familiar than formerly, is seen in the cases wherein licensed vendors of intoxicating liquors were convicted for the unlawful sale of intoxicating liquors on Sunday, or to minors, or to intoxicated persons, notwithstanding the fact that the unlawful act was committed by the owner's barkeeper and without the knowledge of his employer and in disregard of his express instructions.  *Lehman v. District of Columbia,* 19 App. D. C. 217; *State v. Gilmore,* 80 Vt. 514, 16 L. R. A. n. s. 786, and note.  *Robinson Cadillac Motor Car Co. v. Ratekin,* 104 Neb. 369, is a civil case involving the forfeiture of an innocent mortgagee's interest in an automobile wherein substantially the same principle is involved.

As affecting Rosewater's connection with the article upon which the prosecution is based, the findings of the court read in part: "With reference to Mr. Victor Rosewater, I have had some difficulty in arriving at a conclusion.  It is true that punishment of this defendant is of a somewhat vicarious nature.  It is shown by the evidence, to my satisfaction, that he had no actual connection with the writing or the publication of the offensive article."  The court, however, in its findings made some reference to an editorial that appeared in the Bee of

Monday, November 10, that contained a somewhat caustic reference to the police department and the subject generally that was discussed in the paper of the day before, and concluded that it was written by Mr. Rosewater. From a perusal of that editorial the court found: "I am forced to the conclusion, in view of the editorial following the article in question, * * * that, notwithstanding he (Rosewater) had no knowledge of the terms of the article that was printed, it (the article complained of) would have met with his approval if it had been submitted to him." The court thereupon, and apparently on that presumption, found Mr. Victor Rosewater guilty of contempt.

Section 8236, Rev. St. 1913, is the act under which the present proceeding is brought. It provides: "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of any of the following acts: * * * Fourth, any wilful attempt to obstruct the proceedings, or hinder the due administration of justice in any suit, proceedings, or process pending before the courts."

In proceedings for constructive contempt of court in this state we are committed to the proposition that the strict rules of construction obtain that are applicable under criminal prosecutions. Defendants cite *Hawes v. State,* 46 Neb. 149, and *Beckett v. State,* 49 Neb. 210. In the *Hawes* case, in an opinion by Justice Post, it is said: "Presumptions and intendments will not be indulged in order to sustain convictions for contempt of court." The rule there announced was reaffirmed in the *Beckett* case, to which was added the observation that proceedings for contempt of court are in their nature criminal, and governed by the strict rules applicable to prosecutions by indictment. To the same effect is *Hydock v. State,* 59 Neb. 296. See 3 Ency. of Evi. 443, sec. 6.

In view of the citations on this point the argument that suggests itself is, in effect, that Mr. Rosewater cannot properly be held to suffer a vicarious punishment for an

offense that the court found he did not commit, and that it cannot properly be presumed, without proof, that the objectionable article, in the language of the court's findings, "would have met with his approval if it had been submitted to him." But, in view of our conclusion with respect to the penalty that was imposed on Mr. Rosewater, we do not now find it necessary to decide that question. However, it may be observed that lack of knowledge of the existence of an offending article until after its publication has been held to mitigate the severity of a merited punishment, but that such lack of knowledge would not justify the owner in its publication. *People v. Stapleton,* 18 Colo. 568; *Ex parte Nelson,* 251 Mo. 63.

Aside from the fact that Mr. Rosewater did not know the article was in existence until after its appearance, we find a mitigating circumstance in that this is his first offense. Another circumstance in mitigation of his punishment, that may properly be considered here, arises from the fact that his codefendant, the corporate owner of the Bee Publishing Company, was fined $1,000, a penalty that must be permitted to stand. For this we have a precedent in a former decision by this court. *State v. Rosewater,* 60 Neb. 438. The conclusion is that as to the defendant Rosewater the judgment must be vacated.

The freedom that is guaranteed by the Constitution to freely write and publish on all subjects is qualified by the provision that imposes responsibility for the abuse of that freedom. In the present case license has been mistaken for liberty, and, under the alluring guise of a plea for the freedom of the press, it is contended that no offense was committed. From any viewpoint the powerful influence of the press in the affairs of modern civilization is always and everywhere recognized. But when it clearly appears that an attempt is made to use that powerful agency to nullify a lawful exercise of the functions of the judiciary, as those functions relate to a cause then presently pending and undetermined, the hand of punitive justice may properly be applied. Needless to say, it is

not our purpose to interfere with the freedom of the press. We clearly recognize that the law will not suffer punishment to be imposed for a free expression of such criticism as a person or a publisher may entertain for the court's decisions. *State v. Shepherd*, 177 Mo. 205; *Ex parte Barry*, 85 Cal. 603; *Field v. Thornell*, 106 Ia. 7; 13 C. J. p. 34, sec. 44, p. 37, sec. 45. We reaffirm the language of Sullivan, J., as aptly expressive of our view: "Our decisions and all our official actions are public property, and the press and the people have the undoubted right to comment on them and criticise and censure them as they see fit. Judicial officers, like other public servants, must answer for their official actions before the chancery of public opinion; they must make good their claims to popular esteem by excellence and virtue, by faithful and efficient service and by righteous conduct." *State v. Bee Publishing Co.*, 60 Neb. 282, at page 296.

Another feature may be noticed. The verification of the charge by the prosecuting attorney closes with the statement: "The facts set forth in said information are true to the best of my knowledge and belief." Defendants argue that, unless the complaint is verified positively, the court is without jurisdiction. The argument is not tenable. They cited *Herdman v. State*, 54 Neb 626, and *Belangee v. State*, 97 Neb. 184. But in those cases the court did not, as in the present case, order the county attorney to institute the prosecution. It may be noted, however, that the charge in the information, in the present case, is set forth in positive and direct terms. In some cases, in this and other states, this has been held to overcome the defendants' somewhat technical objection. *Emery v. State*, 78 Neb. 547.

The judgment of the district court with respect to the fine imposed upon Rosewater is vacated. With respect to the fine imposed upon the Bee Publishing Company the judgment is affirmed.

REVERSED IN PART, AND AFFIRMED IN PART.

DAY, J., not sitting.