LILLA M. GRAHAM, APPELLANT, V. PANTEL REALTY
COMPANY ET AL., APPELLEES.

FILED MARCH 3, 1926.     No. 24964.

Waters: DIVERSION: DAMAGES. Where water is impounded upon
    land by natural conditions whereby a lake is formed, the owner
    of such land has no lawful right to remove an impediment to its
    flowage and thereby cause such water to flow upon the land of
    another to his damage. For such injury injunction is a proper
    remedy and an injured party may recover such damages in the
    same action as he may have sustained by such wrongful act.

APPEAL from the district court for Morrill county:    P. J.
BARRON, JUDGE.    Reversed.

Morrow & Morrow, for appellant.

Mothersead & York, contra.

Heard before MORRISSEY, C. J., DEAN, DAY, THOMPSON
and EBERLY, JJ.

DEAN, J.

This suit was brought in Morrill county to perpetually
enjoin the Pantel Realty Company et al., defendants, from
unlawfully causing, and from continuing to cause, surface
water to flow from defendants' lands upon hay lands owned
by plaintiff, and for damages alleged to have been sustained
thereby. The land involved in this suit is located in a
valley. Plaintiff's land is used as a cattle ranch and is at
the lower end of the valley, while defendants' lands, so far
as involved here, are, in part at least, at the upper end.
Plaintiff's contention is that the surface waters complained
of were, and are, being conducted to and upon her lands
from certain lakes, ponds, lagoons, pools, and other de-
pressions in the soil, by a system of ditches unlawfully
installed upon their own land by defendants, to the great
and irreparable damage of plaintiff.

All defendants named in the petition, with the exception
of an owner named Show, upon whom no service of sum-

mons was had, answered and denied liability and prayed that plaintiff's petition be dismissed. Upon submission of the evidence, the court found for defendants and against plaintiff. This suit was thereupon dismissed with prejudice. Plaintiff appealed.

This suit and another, entitled *Gentle v. Pantel Realty Company,* were begun at the same time and were tried together in the district court, the defendants being identical in both cases, and the issues are substantially the same. In the present case plaintiff prays for $2,400 damages, and Gentle prays for $5,000 damages. Upon appeal to this court the suits were consolidated for argument. The Gentle case is governed by the decision in this case.

Defendants' ranch consists of about 10,000 acres. There is a lake, called "Rush lake," on the upper end of defendants' ranch which covers about a section of land. About three miles below Rush lake there is a very much smaller lake, or lagoon, and this is also on defendants' ranch. Somewhat below defendants' ranch, and about two miles below the last-mentioned body of water, there is another lake, called "Rapp lake," which covers about 200 acres of land.

The valley in which the land involved herein is situate is narrow and is about six miles in length and runs from the northwest to the southeast. Between the two large lakes, namely, Rush lake and Rapp lake, there are several standing lagoons, or smaller lakes, and a few ponds, pools, and other soil depressions. The elevation of defendants' ranch is, of course, higher than the Graham ranch or the Gentle ranch. Plaintiff's argument is that, by the construction of the ditches complained of, defendants so submerged plaintiff's lands with surface water that more than 150 acres of hay land on plaintiff's tract and between 200 and 300 acres of hay land on the Gentle tract were destroyed as hay-producing tracts or for any agricultural or cattle-raising purpose.

Defendants' argument is that "between these two lagoons (Rush lake and Rapp lake) is almost a continuous chain of

lakes, ponds and sloughs." They contend that there is a natural water-course running through the valley. But this latter proposition is not supported by the weight of the evidence as we view it.

R. E. Knight is a witness called by plaintiff. He was formerly engaged in civil engineering in the valley neighborhood. As quoted by defendants, and set out in their brief, Knight testified:

"The valley is a continuous valley from Rush lake to the lake which I call Rapp lake on the Gentle place. We found a difference in elevation between the Rush lake and Rapp lake of a little better than six feet. Now, the natural drainage of the valley at different points between the ponds is cut off by small ridges and small sand ridges."

It is important to note Knight's evidence in respect of the "difference in elevation" and how "the natural drainage * * * is cut off." Knight also testified that, about midway between Rush lake and Rapp lake, "a cut of six or seven feet is necessary * * * to let the water through," and that such a cut was so made for this purpose. It also appears that there was a natural barrier of earth, at one point below one of the lakes, beyond which the water could not pass until a trench or ditch was installed, which, Knight testified, was dug, and it "averaged from three to five feet all along its course." This evidence tends to establish the fact that the flow of water, which was before accumulated in natural reservoirs or lakes, "ponds and sloughs," from natural rainfall and snow, on defendants' lands, was accelerated by the artificial means above pointed out whereby defendants were enabled to convey the water away from their own lands and discharge it upon plaintiff's lands.

From Knight's evidence it appears that he was familiar with all the lakes in the vicinity, and he testified that none of them had a natural outlet; that, when the levels for the dredge outfit were run to find out whether "the water in Rush lake could be lowered," at the same time they "took the various levels of the ponds down the valley," and at the same time they also ascertained "the depth of the cuts that

would have to be made to drain the lakes from Rush lake down into the other lakes;" that "the cut of five feet that they made with the machine at that time, we figured would lower it (the lake) about two feet; that they made a double cut of five feet;" that on the way down they encountered deeper cuts "in that intermediate lake, * * * but there was a sandbar there that would have to be cut that the machine couldn't cut." A ditch was subsequently dug through this sandbar at a depth of four or five feet to carry the water away. It seems, too, that the rim of the upper lake was lowered to permit the water to escape into the valley. Referring to a plat in the record made by him, Knight testified that from Rush lake the "cut was designated to be a five-foot cut, a double cut with the dredging outfit." He further testified that between the lakes, lagoons, pools, ponds, sloughs, basins and other surface depressions in the valley there is no continuous flow of water unless artificial channels are installed. Witness Rice, called by defendants, testified that the slope of the land, for five miles or more, was practically all hay valleys. His evidence corroborated that of Knight in respect of the installation of the ditches. He also corroborated Knight's evidence in that it was "correct as to the depth and so forth."

L. W. and Charles Skala, called on the part of defendants, corroborated certain material evidence of plaintiff. They testified that they lived in the vicinity of the valley for many years, and that before the ditches were put in they never saw any water flowing out of the lakes.

There is evidence, too, tending to prove that liability was recognized by defendants from the fact that, when one of the lower landowners made complaint of the submergence which is here complained of, to an authorized agent, he was informed that, if he would erect dams, he would be paid for his reasonable services. We do not, however, attach controlling importance to this evidence. From all the evidence, it is clear, however, that damages in some amount were inflicted upon plaintiff.

Some witnesses called by defendants as above pointed out,

Graham v. Pantel Realty Co.

substantiated certain of the material evidence of plaintiff's witnesses. In this respect it may be noted that at least two of these testified that, until the rim of one of the lakes was cut, and the drainage system of ditches was installed by defendants, they never saw any water flowing from the lakes, and they further testified that there never was a natural water-course running down the valley which would carry water to and upon plaintiff's lands. To quote further from the evidence would require more space than should be allotted to this opinion. We deem it sufficient to say that, upon examination, and trial *de novo,* we find that plaintiff's evidence was sufficient to support a judgment in her favor.

It is held generally, in this and other jurisdictions, that in this class of cases a fixed rule cannot be adopted which will distinguish surface waters from permanent bodies of water or at what period of development surface waters lose their fugitive character. Each case, from necessity, must be determined by the surrounding facts. Certain it is that an upper proprietor cannot lawfully cut away the rim of the banks, which incloses a body of standing water on his land, and by the installation of a system of ditches, thereby discharge such water over and upon the lower lands of his neighbor to his injury. This constitutes a nuisance for which the trespasser may be enjoined. And, besides, he may be held in the same suit, to make good for such damages as he may have so unlawfully occasioned.

"An owner of land on which there is a slough or reservoir of surface water cannot lawfully discharge it through an artificial channel upon the land of another to his injury." *Boll v. Ostroot,* 25 S. Dak. 513.

"An owner of land upon which there is a natural accumulation of water into a swamp or lake, has no right to improve his land by draining such waters from one portion of his land through a natural barrier to another portion, whence it would escape over the lower lands of an adjoining proprietor; and the fact that the latter had the right to protect himself against such waters by diking or ditching would not cause the act to fall under the rule of *damnum*

*absque injuria."* *Noyes v. Cosselman,* 29 Wash. 365. See, also, *Davis v. Fry,* 14 Okla. 340, 69 L. R. A. 460.

"The owner of land on which surface water accumulates has no right to conduct the water by an artificial channel to a point on his own land in close proximity to the line, where it will inevitably permeate the surrounding soil and percolate through the same into his neighbor's land, to the permanent injury of the latter." *Schuster v. Albrecht,* 98 Wis. 241.

"A landowner has the right, in the interest of good husbandry, and in the good-faith improvement and tillage of his farm, to fill up sag-holes, pools, and basins on his land, to prevent water accumulating or remaining in them, even if by so doing the water arising from rain-falls or melting snows should, in natural processes, find its way onto the land of an adjoining owner, and incidentally increase the flow thereon; but he cannot, by artificial drains or ditches, collect the waters of such receptacles and cast them in a body upon such proprietor to his injury." *Gregory v. Bush,* 64 Mich. 37.

"A runway or draw, naturally serving to drain off the surface waters of a tributary watershed occasioned by the winter's snow or the spring rains, serving this purpose only temporarily, though periodically, otherwise used and being capable of use for agricultural purposes, is not a water-course." *Froemke v. Parker,* 41 N. Dak. 408.

In an opinion by Maxwell, J., we said: "A party has no right to collect surface water in a ditch or drain and permit it to flow onto the land of another without the latter's consent, and if he do so he will be liable for the damages sustained." *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb. 138.

"Where water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it ditch or swale or draw in its primitive condition, and seeks its discharge in a neighboring stream, its flow cannot be arrested or interfered with by a landowner to the injury

Graham v. Pantel Realty Co.

of the neighboring proprietors." *Roe v. Howard County,* 75 Neb. 448.

"A rural landowner has no right to put up such artificial barriers as will flood his neighbor's land with water that would otherwise escape over his own, for the mere purpose ·of reclaiming the bed of a pond that has always been on his premises, and of getting rid of the inflow." *Boyd v. Conklin,* 54 Mich. 583.

It is perfectly apparent that defendant's gain, from its drainage system, is so vastly less than the gross injury which it has inflicted upon plaintiff as to be almost negligible.

It appears from the evidence of those who, by long experience, are informed on the subject, that the water, so discharged on plaintiff's lands, will in the course of a few years, by evaporation and seepage, and other natural causes, entirely disappear from the.flooded and submerged tracts, and the grass lands may therefore be, in large part, and perhaps entirely, restored to their former natural state of productiveness; provided, of course, that surface water is no longer discharged thereon.

That plaintiff sustained actionable damages, under the facts and the law, seems clearly to appear. The injunction prayed for should therefore have been granted. It follows that the judgment must be reversed. In respect of the extent of the damages, however, the evidence is not clear; so that, in view of the present state of the record, the question of damages remains open, and the parties may, if so advised, submit evidence relating thereto.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

REVERSED.