WILLIS G. GENTLE, APPELLANT, V. PANTEL REALTY
COMPANY ET AL., APPELLEES.

FILED JANUARY 23, 1931. NO. 27336.

*Morrow & Morrow,* for appellant.

*Mothersead & York, contra.*

Heard before Goss, C. J:, Rose, Good, Thompson, Eberly and Day, JJ.

Eberly, J.

The record in this case presents, in all essentials, two final orders for review: One entered herein on the 24th day of September, 1929, adjudicating that the injunction heretofore granted in this action had, under the terms of a stipulation of the parties, been fully complied with, and denying appellant relief; the other entered in this cause on the 29th day of October, 1929, adjudging certain defendants not guilty of violating the terms of this injunction and therefore not guilty of contempt.

The proceedings before us are supplementary to those submitted to the consideration of this court in *Graham v. Pantel Realty Co.*, 114 Neb. 397. For a more complete statement of the facts involved, and the terms of the injunction under consideration, reference is made to that case.

It may be said that, in a trial *de novo,* in the *Graham* case referred to, it was determined by this court: That certain waters had been impounded and formed into lakes by natural conditions on the upper and higher lands of the defendants; that no part of such waters in a state of nature ever flowed upon, over, or caused damage to, the lower and adjoining lands of plaintiff; that, wholly due to the excavations and constructions of ditches by defendants through certain natural protective ridges or elevations of land situated on their lands, and the removal of impediments to their flow, the waters of these lakes were by the defendants unlawfully drained to and cast upon

and flooded plaintiff's land to her damage; that injunction was the proper remedy to abate the nuisance thus created; that plaintiff was entitled to a recovery of damages thus sustained; reversed the action of the trial court denying plaintiff any relief, and remanded the cause, with directions to grant the injunction as prayed, and for further proceedings in harmony with the findings of this tribunal.

The present record discloses that the district court, upon receipt of the mandate from this court, awarded the injunction as directed and retained the case for hearing on the question of the damages involved.

Thereafter the parties to the litigation entered into a stipulation in writing providing for the arbitration of the damages, and that: "It is further stipulated that, for the purpose of avoiding all controversy as to whether or not defendants comply with the injunction heretofore issued in said action, the defendants shall employ Reuben E. Knight as an engineer to formulate plans and specifications for all necessary dams, filling of ditches and such other work as said Knight may determine to be necessary and proper to comply with said injunction, and shall cause, at the time and in the manner said Knight shall determine, and in any event before the first day of October, 1927, such dams, filling of ditches and other work as said Knight shall designate as being necessary to carry out the terms of said injunction to be constructed; provided, however, that said defendants shall fill said ditch up to the natural surface of the ground adjacent thereto immediately below the dam below Rush lake and below the dam below Kane lake for such distance as the defendants may designate, not to exceed, however, one-half mile. Upon the construction of the works as hereinbefore set forth and upon the filing of a certificate in writing by said Knight that said works have been so constructed, the court shall enter judgment finding that the terms of said injunction have been fully complied with; and so long as said defendant, their successors and assigns shall refrain from interfering with, disturbing or removing said works, they shall

not be liable to the plaintiff or his successors or assigns for any damages that may be caused to him by reason of the flow of water from Rush lake and Kane lake or any of the intervening lakes to or upon plaintiff's land." This stipulation of the parties was on the 18th day of May, 1927, approved by the district court and arbitrators duly appointed who, after due proceedings, found for the plaintiff in the sum of $5,370.90. This award was confirmed by the district court and paid by the defendants.

On the 13th day of December, 1927, there was filed in the cause a report of Reuben E. Knight, a civil engineer, which was dated August 31, 1927, and contained the plans and specifications of the improvements referred to in paragraph 5 of the stipulation of the parties, which paragraph is hereinbefore quoted. It sets forth a copy of paragraph 5 and states with reference thereto: "It is evident that article 5 was drawn to cover this part of the mentioned injunction—'to stop the drainage of water as far as the ditch expedited the flow.'" It further sets forth, in substance, that in a state of nature the lands of the plaintiff were protected by three distinct natural barriers; describes the same; sets forth that "filling the ditch below Kane lake would be of no benefit." Blue prints were attached setting forth the nature of the work to be done and further disclosing that the filling of the ditch, as provided for in the fifth paragraph of the stipulation, "for such distance as the defendants may designate, not to exceed, however, one-half mile," was not provided for nor contemplated by the plan. The sworn certificate or affidavit of Reuben E. Knight, dated November 4, 1927, was later filed in this cause showing a full compliance with the work as set forth in his plans, which appear in his report of August 31, 1927. The fills of "not to exceed * * * one-half mile," however, were never made. So far as the record discloses, no notice was ever taken by any of the parties to the action of the plans and specifications, or of the affidavit showing compliance therewith, until May 27, 1929, on which date plaintiff filed objections thereto

and challenged the sufficiency of the work done by Knight and his compliance with the stipulation. It appears this was based, in part at least, upon the fact that the ditches were not filled to the extent of not more than one-half mile, and that on the 23d day of April, 1929, the "dams gave way and permitted the water which had accumulated in said lakes prior to said time to flow through said ditch and upon plaintiff's land," and caused the lands of plaintiff to be again flooded in the same manner as existed at the time of the commencement of the original action; and said defendants have taken no action to restore said dams or to otherwise obstruct the flow of said waters to and upon plaintiff's lands. On the same day, May 27, 1929, the plaintiff also filed an affidavit for contempt, charging that the defendants named had violated the injunction. On the same day the defendants filed a motion based upon the report of Reuben E. Knight for a judgment finding and determining that the injunction issued in this action had been fully complied with under the terms of the stipulation. On the 24th day of September, 1929, the district court, after hearing, determined that the judgment on the stipulation had been fully complied with, found generally for the defendants and against the plaintiff, overruled the plaintiff's objection, and determined "that the injunction heretofore granted in this action, pursuant to the mandate of the supreme court of Nebraska, has been fully complied with." On October 29, 1929, the district court further determined the contempt proceedings in favor of the defendants. The plaintiff now presents an appeal from these orders as provided for by section 20-1912, Comp. St. 1929. Defendants challenge the jurisdiction of this court to review the proceedings of the trial court in the contempt proceedings for the reason that the plaintiff "has failed to file a petition in error as in criminal cases."

Taking up the consideration of the contempt proceedings, it may be said, first, under the Constitution a party may as a right have a case reviewed either by appeal or on error in the court of last resort. *Moore & Cozine v.*

*Herron,* 17 Neb. 703; *Coburn v. Watson,* 48 Neb. 257. But the right of appeal did not exist at common law, is purely a statutory one, and unless expressly conferred does not exist. *Wilcox v. Saunders,* 4 Neb. 569; *Nebraska R. Co. v. Van Dusen,* 6 Neb. 160; *State v. Ensign,* 11 Neb. 529; *State v. Bethea,* 43 Neb. 451; *Hanika v. State,* 87 Neb. 845.

So far as applied to appeals in contempt cases, the controlling provisions of our statutes appear to be:

Section 20-1912, Comp. St. 1929, which provides: "The proceedings to obtain a reversal of * * * final orders made by the district court, *except judgments and sentences upon convictions for felonies and misdemeanors under the Criminal Code,* shall be by filing in the supreme court a transcript certified by the clerk of the district court, containing the judgment" appealed from.

Section 20-2121, Comp. St. 1929, provides: "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of any of the following acts: * * * Third. Wilful disobedience of * * * any lawful process or order of said court."

Section 20-1072, Comp. St. 1929, provides: "Disobedience of an injunction may be punished as a contempt by the court, or by any judge who might have granted it in vacation." And further authorizes the court or judge, in the discretion of such court or judge, upon conviction, to require defendant "to pay a fine not exceeding two hundred dollars, for the use of the county, to make immediate restitution to the party injured and give further security to obey the injunction; or, in default thereof, he may be committed to close custody, until he shall fully comply with such requirements, or be otherwise legally discharged." It is to be noted in this connection that sections 20-2121, 20-2122, and 20-2123, Comp. St. 1929, which regulate the subject of contempts, in their present form constituted a part of the Revised Statutes of 1866, and appear unchanged in the present compilation. It will also be noted that, as employed in section 20-2121, Comp. St.

1929, the words "as for criminal contempt," in connection with the context, suggest as equivalent the words "as it' would be if a criminal contempt," or "supposing that it was a criminal contempt." It is true that such proceedings in certain aspects may be deemed remedial and appropriate to the enforcement of civil obligations. The statutes, however, afford no basis of distinction on this ground, but, in terms which embrace both civil and criminal contempts, direct that judicial investigation and determination thereof be "as for criminal contempt." The certain implication of the sections of our statutes above referred to, construed as *in pari materia,* thus necessitates the conclusion that proceedings for contempt of court are in their nature to be deemed criminal. *Boyd v. State,* 19 Neb. 128; *O'Chander v. State,* 46 Neb. 10; *Zimmerman v. State,* 46 Neb. 13; *Furrer v. Nebraska Building & Investment Co.,* 109 Neb. 1.

Punishments of contempts are thus governed by the rules applicable to prosecutions by indictment. *Beckett v. State,* 49 Neb. 210; *Bee Publishing Co. v. State,* 107 Neb. 74; *Furrer v. Nebraska Building & Investment Co.,* 109 Neb. 1.

Under the facts in the present case, there was necessarily involved the possibility, in the discretion of the trial court, of imposing the penalty that the defendants should pay a fine not exceeding $200. Thus considered, the proceeding must be considered as the equivalent of a prosecution for a misdemeanor. Comp. St. 1929, sec. 29-102. If this be true, the review of the action of the trial court is within the terms of the exception contained in section 20-1912, Comp. St. 1929, and the controlling principle as to the presentation of this class of cases for review in this tribunal is: "A conviction under contempt proceedings can only be reviewed in the supreme court by the filing of a petition in error as in a criminal case." *State v. Dodd,* 99 Neb. 800; *Hanika v. State,* 87 Neb. 845; *Thompson v. Nelson,* 4 Neb. (Unof.) 687. Under the rec-

ord before us, the challenge to the jurisdiction must be sustained.

The second query for our determination is: Did the district court properly determine "that the injunction heretofore granted in this action * * * has been fully complied with?" An analysis of this order, as originally entered by the district court on June 26, 1926, discloses that it consists of three distinct provisions, which will be hereafter indicated as paragraph 1, 2, and 3.

Paragraph 1 perpetually enjoined and restrained the defendants "from continuing to permit or causing the water to flow from Rush lake into or through the ditches described in plaintiff's second amended petition, and from continuing to permit or causing the water to flow from Kane lake into or through the ditches leading therefrom * * * into the valley in which plaintiff's land is located."

Paragraph 2 provides: "Said defendants * * * are hereby commanded and directed to immediately place a substantial dam at the upper end of said ditch immediately below Rush lake in such a way as to permanently obstruct and prevent the flow of any water from Rush lake into or through said ditch, and another substantial dam in said ditch immediately below Kane lake in such a manner as to permanently prevent the water from flowing from said lake into or through said ditch."

Paragraph 3 provides: "Said defendants are hereby perpetually enjoined and restrained from draining the water from any of the lakes mentioned * * * and casting the water therefrom to or upon plaintiff's land," particularly described.

It must be conceded that this injunctional order remains in full force and effect except as to changes therein expressly authorized by the terms of paragraph 5 of the stipulation heretofore referred to, and provided further that such stipulation has been substantially complied with by the defendants. Now the binding, controlling stipulations between the parties, and the true interpretation thereof as evidencing the true intent, must be determined by a careful

comparison of the terms of the stipulation referred to and the provisions of the decree above quoted, always keeping in view the situation of the parties. Indeed, the following statement of the rule applicable to this situation may be deemed approved by the authorities: "Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. It is therefore an established canon of construction that, in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application. And the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made." 6 R. C. L. 849, sec. 239.

"The contract must be read according to the intent of the parties in spite of clerical errors and omissions which, if followed, would change that intention." 13 C. J. 538, sec. 503.

"The intention of the parties, which courts seek to discover in giving construction to a contract, is to be gathered, not from particular words and phrases, but from the whole context of the agreement. In fact, it may be said to be a settled rule in the construction of contracts that the interpretation must be upon the entire instrument, and not merely on disjointed or particular parts of it. The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause." 6 R. C. L. 837, sec. 227.

So read, it is plain that the intent of all parties to the litigation was, at the time the stipulation was made and entered into, that no water should be thereafter cast upon the lands of plaintiff through or by means of the ditches which had been constructed by the defendants, and which was the source of the litigation here presented. The express agreement set forth in the stipulation, it will be noted, provided for the determination of the details of construction which by the second paragraph of the injunctional order, as above indicated, were required to be so placed and so made by the defendants "as to permanently obstruct and prevent the flow of any water" over the premises of plaintiff through the ditches described. To these agreements the stipulation attaches in terms a proviso relating to a certain detail of construction which was not to be submitted to the discretion of the engineer, but was expressly provided for, and which involved the filling up of certain ditches, but in no manner otherwise qualified the expressed intent of all parties that the result sought and expressed by the injunction was that the protection of plaintiff's property from the waters complained of should be fully accomplished. Then, too, the terms of the stipulation as to the constructions which the defendants were required to, and did agree to, make were limited to the construction required by the terms of the injunction as expressed in the second paragraph above indicated. In the light of the entire record, we can extend these words no further. The terms of the certificate must be likewise limited to a compliance with the second paragraph of the injunction, and this fact in turn operates to limit the possible scope of the judgment finding due performance by the defendants, and affords no support to a judicial finding in excess of the powers expressly stipulated.

True, the stipulation provides that, after full performance of the terms thereof by the defendants, the filing of the engineer's certificate therein provided for, and the approval by the district court, "so long as said defendants, their successors and assigns, shall refrain from interfering with, disturbing or removing said works, they shall

not be liable to the plaintiff or his successors or assigns for any damages that may be caused to him by reason of the flow of water from Rush lake and Kane lake or any of the intervening lakes to or upon plaintiff's land." Considering this to be in terms an effectual waiver of plaintiff's remedy in damages, it is to be remembered that damages are not the sole remedy for the wrong here involved which the law places in the hands of courts of equity. In fact, in many cases the inadequacy of the remedy by damages justifies the exercise of equitable powers of coercion. In the present case, if it be assumed that defendants have fully complied with the stipulation, and by his agreement the plaintiff has legally waived his recourse for damages, it is yet true that paragraphs 1 and 3 of the injunctional order entered by the district court on the 26th day of June, 1926, are and remain in full force and effect, and afford ample power for the protection of plaintiff's land against the mere permissive flooding by the defendants in this action. The controlling maxim, in view of the circumstances here presented, is: *"Expressio unius est exclusio alterius."* Broom's Legal Maxims (9th ed.) 420. The waiver of damages embraces no more than it expresses, and does not include the waiver of other remedies provided by the decree, or implied thereby.

But this court is unanimously of the opinion that the defendants have not complied with the stipulation; that the words thereof, "provided, however, that said defendants shall fill said ditch up to the natural surface of the ground adjacent thereto immediately below the dam below Rush lake and below the dam below Kane lake for such distance as the defendants may designate, not to exceed, however, one-half mile," in the light of the entire record, can justify but one conclusion, which is, that we are confronted with an obvious clerical error and that the true meaning of the last quoted sentence, as indicated by the context and the surrounding circumstances, is: "That said defendants shall fill said ditch * * * for such distance as the plaintiff may designate, not to exceed, however, one-half mile." Such being the case, if we are to regard the

stipulation as a matter of procedure, our statute provides: "The court in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." Comp. St. 1929, sec. 20-853. Or, if to be deemed a simple contract in writing, it must be "read according to the intent of the parties in spite of clerical errors and omissions which, if followed, would change that intention." 13 C. J. 583, sec. 503.

The record discloses that there was a complete failure on the part of the defendants to permit the plaintiff to designate the fills to be made, as the stipulation thus interpreted provided, and that, notwithstanding the report and certificate of the engineer, there has been no substantial performance of the terms of the stipulation in question by the defendants.

The conclusion, therefore, is that the trial court erred in the entry of its judgment of September 24, 1929, and therein in determining "that the injunction heretofore granted in this action * * * has been fully complied with." This judgment is therefore reversed and the cause is remanded, with directions to the trial court to enter a decree herein finding for the plaintiff, and adjudging noncompliance with the stipulation on the part of the defendants, and permitting further proceedings in harmony with this opinion.

REVERSED.