MARIE GROSS, PLAINTIFF IN ERROR, v. GARFIELD COUNTY ET AL., DEFENDANTS IN ERROR.

16 N. W. 2d 850

FILED DECEMBER 22, 1944. No. 31778.

*Harold A. Prince* and *Davis & Vogeltanz,* for plaintiff in error.

*W. F. Manasil, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is a contempt proceeding against Marie Gross, growing out of an alleged violation of an injunctive order entered by the district court for Garfield county in 1924. The trial court found her guilty and assessed a fine of $10 and costs. From this judgment Mrs. Gross brings error proceedings to this court.

The record shows that in 1923 Marie Gross brought an action to enjoin Garfield county and its officers and agents from trespassing upon her real estate and attempting to

change the existing watercourse on said land by opening or constructing any ditch, waterway, dam or other earthworks upon or adjacent to her land. Defendants answered and cross-petitioned, alleging that Marie Gross had obstructed the natural watercourse, and praying for an injunction requiring her to keep the watercourse clear of weeds and other obstructions. The parties thereupon entered into a written stipulation which was duly filed in said action and in consequence of which the court on April 10, 1924, entered a decree by the terms of which the "plaintiff * * * are hereby perpetually enjoined and restrained from in anywise obstructing or altering the drainage of the surface water upon the said land of the said plaintiff, filling any ditches thereon or changing the said drainage from the condition in which it was at the time of the commencement of the said action or any time thereafter to the time of the entry of this decree, and from excavating any ditches or laterals changing in any manner the drainage of the surface waters thereon, * * * ." It must also be noted that the decree thus entered contained a finding that the facts stipulated by the parties were true, among them being the following: " * * * that there is a natural water course across the said south half of the southwest quarter of said section twelve, the exact course of which has been, and still is, in dispute; * * * ." It will be observed that no mandatory injunction was included in the decree for the very evident reason that the location of the natural watercourse was not determined. It is clear that the purpose of the injunction was to maintain the *status quo* in so far as the parties to the litigation were concerned.

On or about May 12, 1942, the county filed its motion for a citation directing Marie Gross to appear and show cause why she should not be proceeded against and punished for contempt for violating the injunctive order of April 10, 1924. The violation is charged in the following language: "That notwithstanding said decree, the plaintiff or her tenants and servants have disregarded and disobeyed the order of said court and has changed and altered the drainage

of the surface water upon the said land of the plaintiff and has thereby caused a large amount of the said surface water to be diverted from the natural water course and has caused said water to flow across and damage the Garfield county highway * * * ."

The land specifically involved in this litigation is the south half of the southwest quarter of the section. A state highway runs north and south along the west end of the tract and a county road runs east and west along the south side of it. The record discloses that two natural watercourses enter the tract from the north and come together at a point about 400 feet south of the north line. At a point approximately 200 feet south of this juncture the natural watercourse divides. One branch follows a southerly course slightly to the east. This watercourse crosses the Gross land and runs onto the county road along the south side thereof. The other branch pursues a southerly course slightly to the west until it reaches a point approximately 300 feet south where it again divides. At this point there appears upon the surface of the ground a ditch running west to the state highway at a point where a bridge was constructed to permit drainage waters therefrom to pass through. The other course was to the south in the general direction of the southwest corner of the tract where it runs into the road ditch paralleling the county road.

It is evident from a general consideration of the evidence that a drainage channel or slough ran from the point of this last diversion in a westerly direction to what is now the state highway at and prior to the entry of the first decree in 1924. The evidence is conflicting as to whether water ran south from this point during that period. That the west watercourse had a natural tendency to fill up with mud and débris is evident from the record, in addition to the fact that the county saw fit to clean this drain in 1938. It seems clear to us that the drainage area of these enumerated drains has increased or that increased precipitation has brought about changing conditions in this immediate territory. The natural drainage course was not determined

in the former litigation. No evidence of any overt act on the part of any person has been shown. There is evidence that a small obstruction was once observed in the ditch. This was explained as having been placed there by the seven-year-old son of the tenant, while at play. The natural tendency of the west ditch, generally referred to as the dug ditch, to fill with débris and silt is something that cannot be charged to Mrs. Gross in view of the absence of any mandatory requirements in the injunctive order. The results complained of as a basis for the citation for contempt could as well have been the work of uncontrolled floodwaters as that of the alleged contemner or her tenants or servants. Under such circumstances a conviction for contempt cannot be sustained in the absence of proof of an overt act, properly established by the evidence, which is violative of the terms of the injunctive order alleged to have been violated.

It is urged that this fact has been established by circumstantial evidence. We cannot agree with this contention. For a conviction for contempt to be sustained on such evidence it must be such that it is susceptible of explanation upon no reasonable hypothesis consistent with the innocence of the alleged contemner. We think the evidence in the present case is insufficient to meet the requirements of this rule. This court has held that contempt proceedings are in their nature criminal and no intendments will be indulged in to support a conviction; also, that it is necessary to establish guilt beyond a reasonable doubt. *Gentle v. Pantel Realty Co.,* 120 Neb. 630, 234 N. W. 574; *State ex rel. Wright v. Barlow,* 132 Neb. 166, 271 N. W. 282. It is also required that the disobedience of the injunction must be willful before a breach thereof may be punished as a contempt. *Hawthorne v. State,* 45 Neb. 871, 64 N. W. 359; *Whipple v. Nelson,* 138 Neb. 514, 293 N. W. 382.

We are of the opinion that the evidence does not sustain a finding beyond a reasonable doubt that the alleged contemner willfully violated the terms of the injunctive order entered on April 10, 1924. The evidence adduced does not

show that Mrs. Gross, or any one acting through or under her, did anything affirmatively which obstructed or altered the drainage of surface waters, or filled any ditches or changed the direction of any watercourse contrary to the terms of the injunctive order claimed to have been violated. There is ample evidence to sustain a finding that the matters complained of were caused by the action of exceptionally heavy precipitation, flash floods and the natural action of uncontrolled surface waters. We are bound to accept this reasonable hypothesis shown by the evidence rather than that the circumstances indicate a willful violation of the injunction by the person charged.

This conclusion makes a discussion of other alleged errors unnecessary. The judgment of the trial court is reversed and the cause dismissed.

REVERSED AND DISMISSED.